**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **KINGDOM INSURANCE GROUP, LLC, et al.,** | : : : | |
| **Plaintiffs,** | : : | |
| **v.** | : : | **Civil Action No. 7:10-CV-85 (HL)** |
| **CUTLER & ASSOCIATES, INC., et al.,** | : : : | |
| **Defendants.** | : : | |
| _____ | : | |

## ORDER

The Defendants Cutler and Associates, Inc. and Shep R. Cutler ("collectively Cutler") have filed a motion to disqualify Plaintiffs' counsel, Michael P. Bruyere ("Bruyere") and John F. Kane ("Kane"), from appearing in this case (Doc. 13). For the following reasons, the motion is granted. Bruyere and Kane are disqualified from acting as counsel. This disqualification imputes to all lawyers associated in their law firm, Fields, Howell, Athans and McLaughlin, LLP.

The request for oral argument (Doc. 30) is denied because the Court can resolve this motion without the benefit of argument from the parties.

## I.    FACTUAL BACKGROUND

Germane to the issues presented in this motion is the relationship between this case and a case brought in North Carolina.

**A.    The Present Case**

The claims for relief asserted against Cutler by the Plaintiffs Kingdom Insurance Group, LLC, Kingdom Business Services, LLC, Kingdomcare, LLC, and Kingdom Benefits Association, LLC ("collectively Kingdom") arise out of a series of agreements that Kingdom entered into with Cutler in order to market the insurance products of Defendant United Healthcare Insurance Company ("United").[1]

United sells its insurance products by way of field marketing organizations ("FMOs") and agents.  The contractual arrangements between United, FMOs, and the agents create a structure referred to as a hierarchy. The positions within the hierarchy determine the amount of commission paid to the members for the sale of United's products. The majority of the commission paid by United for a product sale goes to the agent, who is downline in the hierarchy, but the remaining balance is divided up between other upline members of the hierarchy in accordance with an agreed upon commission schedule.

Cutler served as an FMO for United. Its responsibility was to recruit agencies and agents to sell products directly to customers and to assist agencies find more agents to sell United's products.  In 2006 Cutler recruited Kingdom.  By 2007 Kingdom accepted an appointment by United to serve as an agent below Cutler in the hierarchy. Pursuant to its agreement with United, Kingdom agreed to train its

---

[1] Cutler contracted with Pacificare/Secure Horizons.  United later acquired Pacificare/Secure Horizons.

agents to sell United's insurance products, specifically Medicare Advantage plans, and recruit agents to sell United's products. If one of Kingdom's agents sold a United product, Kingdom and Cutler would receive a portion of the commission. Cutler's additional responsibilities included processing sales made by Kingdom's agents and ensuring that commission payments would be made promptly.

Kingdom alleges that Cutler failed to perform its responsibilities as an FMO. It contends that Cutler's antiquated operational methods caused Cutler to be unprepared to handle the workflow generated by Kingdom's sales and recruitment efforts. Cutler is also alleged to have not assisted Kingdom in the recruitment of new agents. Kingdom asserts that commission payments were delayed and that Kingdom was forced to assume Cutler's responsibilities.

In September 2007, Kingdom met with United and Cutler. Kingdom wanted Cutler to release it from the hierarchy so that Kingdom could become the FMO. According to Kingdom, the parties reached agreements that remedied Kingdom's concerns about being paid as an agent even though it was doing the work of an FMO. Despite their agreements, the compensation problems with Cutler continued. As a result, Kingdom lost thousands of sales. In addition, Kingdom alleges that United and Cutler cut Kingdom out of the hierarchy by transferring Kingdom's agents directly to Cutler, causing Kingdom to lose commission payments.

Kingdom claims breach of contract, tortious interference with business relations, misappropriation of trade secrets, negligent misrepresentation, fraudulent

misrepresentation, unjust enrichment, fraud, conspiracy, and equitable relief.

Kingdom is represented by Bruyere and Kane.

## B.   The North Carolina Case

In a separate matter, Cutler and Kingdom were sued in 2006 by Peek Performance Inc., and Clay Peek ("collectively Peek") in North Carolina state court ("the North Carolina suit").[2] Bruyere and Kane jointly represented Kingdom and Cutler. Peek's complaint arose out of Peek's agreement with Kingdom and Cutler to market United's products. Peek was a member of United's hierarchy.

Peek alleged that Cutler and Kingdom breached their contract by failing to deliver computer equipment to assist with commission payments, delaying the payment of commissions due to Peek, and failing to manage appointments properly. Peek's agents allegedly become frustrated and decided to stop working with Peek. Peek further alleged that Kingdom and Cutler lured Peek's agents away from Peek in order to cut Peek out of the hierarchy.

Cutler has now moved to disqualify Bruyere and Kane as counsel for Kingdom because they formerly represented Cutler in the North Carolina suit. They contend that Bruyere and Kane have violated their ethical duty owed to former clients.

## II.   DISCUSSION

Courts are "reluctant to grant motions to disqualify opposing counsel because disqualification has an immediate adverse effect on the client by separating him from

---

[2] Peek filed a third party complaint against Cutler and Kingdom.

counsel of his choice, because parties often move for disqualification of opposing counsel for tactical reasons, and because, even when made in the best of faith, such motions inevitably cause delay." Clough v. Richelo, 274 Ga.App. 129, 132, 616 S.E.2d 888 (2005) (quotations and citations omitted).  "If a district court bases its disqualification order on an allegation of an ethical violation, the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.... The court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." Herrmann v. GutterGuard, Inc., 199 Fed. Appx. 745, 752 (11th Cir. 2006) (citation omitted).

The party bringing the motion to disqualify bears the burden of proving the basis for disqualification. Id.  Attorneys practicing in this Court are bound by the Georgia Rules of Professional Conduct. M.D. Ga. R. 83.2.1. Attorneys are also bound by the federal common law and the American Bar Association Model Rules of Professional Conduct to the extent that they are not inconsistent with the Georgia Rules. Herrmann, 199 Fed. Appx. at 752; M.D. Ga. R. 83.2.1.

Cutler alleges that Bruyere and Kane violated Rule 1.9(a) of the Georgia Rules of Professional Conduct when they appeared in this case on behalf of Kingdom. Cutler contends that Bruyere and Kane violated their ethical duty owed to a former client.

## A.     Georgia Rule of Professional Conduct 1.9

Georgia Rule of Professional Conduct Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."  Ga. Rules of Prof'l Conduct R. 1.9(a).

Whether an attorney should be disqualified for violation of Rule 1.9 depends on the answers to a two-step inquiry: "(1) was there a previous attorney-client relationship and, if so, (2) did that relationship involve a matter substantially related to the current proceeding?"  Jones v. InfoCure Corp., 2003 WL 22149656, at  * 2 (N.D. Ga. May 13, 2003) (citation omitted).

Kingdom argues that the two-step substantial relationship inquiry is not implicated in this case because Bruyere and Kane jointly represented Kingdom and Cutler in the North Carolina suit.  The fact of joint representation is fatal to Cutler's motion, it contends, since no confidential information is shared between joint clients.  Stated another way, Bruyere and Kane cannot breach an ethical duty owed to Cutler since any confidential information the lawyers received from Cutler could be shared with Kingdom during the North Carolina suit.  Kingdom points to cases decided by courts outside the Eleventh Circuit finding that before the substantial relationship test is reached, it must be shown that the attorney was in a position to receive confidential information. (Doc. 29, p. 7).

6

Neither Kingdom nor Cutler directed the Court in their briefs to a decision that is binding on this Court, <u>Brennan's, Inc. v. Brennan's Rests., Inc.</u>, 590 F.2d 168 (5th Cir. 1979).[3] In <u>Brennan's</u>, the court rejected the argument that joint representation protects against disqualification. <u>Brennan's</u>, 590 F.2d at 172. The court acknowledged that joint representation means that neither party can later assert the attorney-client privilege against the other as to matters touching upon the joint representation. <u>Id.</u> However, the court noted that the evidentiary attorney-client privilege is more limited than the ethical duty owed to former clients by attorneys. <u>Id.</u> It explained that "[t]his ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge." <u>Id.</u> (citation omitted). Lawyers "should avoid even the appearance of professional impropriety." <u>Id.</u> (citation omitted). "A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the client in the same manner." <u>Id.</u> The Court concluded that an attorney can be disqualified from a case if he chooses to represent a client adverse to his former client in the same or substantially related matter, even if he formerly jointly represented both parties.

Accordingly, the holding in <u>Brennan's</u> requires the Court to reach the

_____

[3] The decision in <u>Brennan's</u> has not been overruled and is binding Eleventh Circuit authority. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981).

substantial relationship inquiry even though Kingdom and Cutler could not assert the attorney client privilege against each other due to Bruyere and Kane's former joint representation.

Regarding the first prong of the substantial relationship inquiry, Kingdom does not dispute that Bruyere and Kane formerly represented Cutler. Kingdom disputes the second prong, whether this case is substantially related to the North Carolina suit. Cases may be "substantially related" if they have material and logical connections. Cardinal Robotics, Inc. v. Moody, 287 Ga. 18, 22, 694 S.E.2d 346 (Ga. 2010). Three factors should be considered in determining whether a substantial relationship exists: (1) scope of the prior representation; (2) the reasonableness of inferring that confidential information allegedly given would have been given; and (3) the relevance of the information to the issues raised in the pending litigation. Snapping Shoals Elec. Membership Corp. v. RLI Ins. Corp., 2006 WL 1877078, at * 6 (M.D. Ga. July 5, 2006) (citation omitted). It appears to the Court that there is a substantial relationship between this matter and the North Carolina suit.

Kingdom argues that the cases are not substantially related because Peek is not a party to this case. That argument misses the mark. Whether cases are substantially related depends on the nature and subject matter of the claims, not whether the parties are the same. Kingdom further argues that Bruyere and Kane received almost no information from Cutler and that their representation of Cutler was very limited. Bruyere and Kane averred that they did not receive any

confidential information or sensitive documents from Cutler, never interviewed Cutler's employees, never discussed Cutler's formal or informal business practices, never gained insight into Cutler's litigation philosophy, and never visited Cutler's offices or had in person meetings with Cutler.

One can reasonably assume that Bruyere and Kane could learn facts during the North Carolina suit about how Cutler managed and performed under the United sales hierarchy. The facts of the current suit against Cutler are founded in part on the facts surrounding the North Carolina suit, mainly whether Cutler's operational failures caused delays in commission payments and whether Cutler conspired to have agents removed from the established hierarchy.

While it may be true that Bruyere and Kane's representation of Cutler was limited and that confidential information may not have been disclosed, the law requires that a lawyer avoid the appearance of professional impropriety. Whether there is the possibility of impropriety depends on whether "information which counsel may have received in its prior representation . . . is . . . relevant to the issues raised in the pending litigation . . . ." Ramada Franchise Sys., Inc. v. Hotel of Gainesville Ass., 988 F. Supp. 1460, 1465 (N.D. Ga. 1997). In addition, "whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney . . . ." Dodson v. Floyd, 529 F. Supp. 1056, 1060 (D.C. Ga. 1981). Because the appearance of impropriety or the appearance that confidential information may have been disclosed

9

are the critical issues, the Court does not believe that counsel can argue their way around the substantial relationship test by averring that they did not receive confidential information.

Moreover, the argument that Bruyere's and Kane's representation was limited is somewhat belied by the discovery that occurred in the North Carolina case, specifically that Cutler responded to Peek's interrogatories and requests for production of documents. Because there was some discovery, it can be inferred that Kane and Bruyere gained information relevant to the issues present in this case.

Accordingly, the pending case against Cutler is substantially related to Bruyere and Kane's representation of Cutler and Kingdom in the prior North Carolina case. Based on this finding, the Court concludes that the continued representation of Kingdom by Bruyere and Kane would be a violation of Rule 1.9. Nevertheless, the mere presence of a conflict alone does not always require that the attorney be disqualified. Adkins v. Hosp. Auth. of Houston Cnty., 2009 WL 3428788, at * 13 (M.D. Ga. Oct. 20, 2009). The Court must weigh other factors to determine whether disqualification is appropriate.

**B.    Other Factors**

When determining whether disqualification is appropriate, the Court should consider: "(1) whether the conflict might affect the pending litigation; (2) at what stage of litigation the disqualification issue was raised; (3) whether other counsel can handle the matter; (4) the appearance of impropriety; and (5) the costs of

disqualification." Id. (citation omitted).

Kingdom argues that Cutler waived its right to move for disqualification because Cutler waited five months after it was served with the complaint before filing this motion. Kingdom also argues that disqualification would serve no purpose since Kingdom has access to the same information that Cutler has from the North Carolina case. Further, it argues that denying it of its counsel of choice would cause Kingdom prejudice.

Cutler, in response, argues that there has been no waiver of its right to move for disqualification because the motion was filed before any discovery has occurred and before other preliminary motions have been ruled on by the Court. Cutler informed Bruyere and Kane of its intent to file a motion to disqualify, presumably to provide Kingdom the option of obtaining new counsel. Moreover, Cutler requested that Bruyere and Kane produce the North Carolina file, but Bruyere and Kane waited a month to send the file to Cutler's counsel. Finally, Cutler contends that disqualification would enforce the ethical rules.

The first factor the Court must consider weighs against disqualification. Cases that have found that the conflict may affect litigation focus on the potential disclosure of confidential information. See e.g., Cone Finan. Grp., Inc. v. Emp'r Ins. Co. of Wausau, 2010 WL 3190619,at * 3 (M.D. Ga. Aug. 11, 2010) ("the case may be affected as issues may arise with regard to potential use of confidential information by [counsel]."); Adkins, 2009 WL 3428788 at * 13 ("Counsel's continued

representation of Plaintiff may likely cause even more delay, as it is foreseeable that future challenges may be made to Counsel's impartiality and potential use of confidential communication as the case progresses."); Snapping Shoals, 2006 WL 1877078 at *7 ("knowledge gained in [counsel's] previous representation might aid discovery in the instant matter."). In this case, there is less of a concern that confidential information will be disclosed because the former representation was a joint representation and neither party can assert the attorney client privilege for communications related to the North Carolina suit. There is, however, the possibility that the confidential information issue may be raised by the parties later in this case and will require a decision from the Court.

While the first factor weighs against disqualification, the other factors all favor disqualification. Regarding timeliness, Cutler has not waived its right to move for disqualification because it moved to disqualify Bruyere and Kane before discovery began. See Cone, 2010 WL 3190619, at * 3 (finding that motion was timely because it was filed less than a year after removal of the case to this court and during the discovery phase of the case).

As to the other factors, the Court sees no reason why new counsel cannot enter the case and provide Kingdom effective representation. That Bruyere and Kane have represented Kingdom for many years does not mean that new counsel will not provide effective representation and prejudice Kingdom. There is an appearance of impropriety in this case because Bruyere and Kane formerly

12

represented Cutler and now are suing Cutler in a substantially related matter.  In addition, the costs of disqualification are limited because discovery has not started, which means that Kingdom will have sufficient time to find other attorneys to represent it.

In total, the Court concludes that the balance of the factors weigh in favor of disqualification. Bruyere and Kane are accordingly disqualified from representing Kingdom in this case.

### C.    Rule 1.10

Rule 1.10(a) of the Georgia Rules of Professional Conduct states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule . . . 1.9 . . . ." Ga. Rules of Prof'l Conduct R. 1.10(a). Since Bruyere and Kane are disqualified from representing Kingdom, Rule 1.10(a) prohibits all lawyers in their firm Field, Howell, Athans and McLaughlin, LLP from representing Kingdom.

### III.    CONCLUSION

For the explained reasons, the Cutler Defendants' motion to disqualify Bruyere and Kane from acting as counsel in this matter (Doc. 13) is granted.   The disqualification is imputed to all lawyers associated in a firm with Bruyere and Kane.

**SO ORDERED**, this the 4th day of April, 2011.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc