**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **KINGDOM INSURANCE GROUP, LLC,** | : | |
| **et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **7:10-cv-85(HL)** |
| **v.** | : | |
| | : | |
| **CUTLER AND ASSOCIATES, INC., et** | : | |
| **al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| _____ | : | |

## ORDER

Before the Court are the motions to dismiss filed by Defendant United Healthcare

Insurance Company ("United") (Doc. 15) and Cutler and Associates, Inc. and Shep R.

Cutler ("the Cutler Defendants") (Doc. 16).  For the following reasons, the motions are

granted in part and denied in part.

## I.     PROCEDURAL BACKGROUND

The numerous claims for relief in the Plaintiffs' (collectively referred to as

"Kingdom") complaint arise out of a series of agreements Kingdom entered in order to

market the insurance products of United. Kingdom filed its complaint on August 28,

2009 in the Superior Court of Thomas County, Georgia. The Defendants removed the

case to this Court, but the Court remanded it after finding insufficient evidence

establishing diversity jurisdiction.

On remand, Kingdom filed a second amended complaint and the Defendants

soon after removed the case again. The Court found that diversity jurisdiction existed in part because Kingdom asserted in the amended complaint that it sought over $75,000 in damages. Pending before the Court are motions to dismiss the second amended complaint pursuant to Rule 12(b)(6) for failure to state claims upon which relief may be granted and pursuant to Rule 9(b) for failure to plead the misrepresentation claims with particularity.

Kingdom opposes the motions to dismiss, but asks the Court to grant it leave to amend the complaint if any claim is found to be deficient.

## II. FACTS ALLEGED IN THE COMPLAINT

United sells its insurance products by way of field marketing organizations ("FMOs") and agents. The contractual arrangements between United, FMOs, and the agents create a structure referred to as a hierarchy. The positions within the hierarchy determine the amount of commission paid to the members for the sale of United's products. The majority of the commission paid by United for a product sale goes to the agent, who is downline in the hierarchy, but the remaining balance is divided up between other upline members of the hierarchy in accordance with an agreed upon commission schedule.

Cutler served as an FMO for United. Its responsibility was to recruit agencies and agents to sell products directly to customers and to assist agencies find more agents to sell United's products. In 2006 Cutler began recruiting Kingdom to serve as a downline agent. In 2007 Kingdom accepted an appointment by United to serve as an agent below Cutler in the hierarchy. Pursuant to its agreement with United, Kingdom

2

agreed to train its agents to sell United's insurance products, specifically Medicare Advantage plans, and recruit agents to sell United's products. If one of Kingdom's agents sold a United product, Kingdom and Cutler would receive a portion of the commission. In addition to assisting Kingdom recruit agents, Cutler's responsibilities included processing sales made by Kingdom's agents and ensuring that commission payments issued by United would be distributed promptly to Kingdom.

Kingdom alleges that Cutler failed to perform its responsibilities as an FMO. It contends that Cutler's antiquated operational methods caused Cutler to be unprepared to handle the workflow generated by Kingdom's sales and recruitment efforts. Cutler is also alleged to have not assisted Kingdom in the recruitment of new agents even though United provided Cutler funds for that purpose. Kingdom asserts that commission payments were delayed and that Kingdom was forced to assume Cutler's responsibilities. Kingdom spent its own resources performing the tasks Cutler should have performed. United and Cutler did not reimburse Kingdom for the costs it incurred in expending additional resources.

In September 2007 Kingdom met with United and Cutler. Kingdom wanted Cutler to release it from the hierarchy so that Kingdom could become the FMO. According to Kingdom, the parties reached agreements that remedied Kingdom's concerns about being paid as an agent even though it was doing the work of an FMO. Kingdom explains that it entered into a side agreement with Cutler, where Cutler agreed to cut the commission amount it would receive from United and to increase Kingdom's commission amount if Kingdom's agents produced 5, 000 enrollees during the 2008

3

enrollment period. Kingdom entered into a separate agreement with United where United agreed to raise Kingdom to an FMO in 2009 if it renewed its agreement to serve as an agent below Cutler during 2008. United also promised that it would compensate Kingdom at the level of an FMO during 2008 even though Cutler would remain the named FMO.

Despite their agreements, Kingdom alleges that problems continued. Cutler, for example, failed to communicate information to Kingdom and some of Kingdom's agents did not receive their commissions, failed to receive their certification from Cutler, and did not receive credit for the number of enrollees they made. These agents terminated their efforts with Kingdom and Kingdom lost enrollees. As for United, Kingdom alleges that it failed to pay Kingdom commissions that were due and instead applied the commissions against expenses United wrongfully claimed Kingdom owed. United also did not appoint Kingdom as the FMO in 2009 as it had promised. Kingdom lastly alleges that United and Cutler conspired to cut Kingdom out of the hierarchy by transferring Kingdom's agents directly to Cutler, disrupting the hierarchy, and causing Kingdom to lose commission payments.

Kingdom's complaint contains claims for breach of contract, tortious interference with business relations, misappropriation of trade secrets, negligent misrepresentation, fraudulent misrepresentation, unjust enrichment, fraud, conspiracy, and equitable relief.

## III. LEGAL STANDARDS

United and Cutler move to dismiss the complaint under Rule 12(b)(6) and Rule 9 of the Federal Rules.

## A.    Rule 12(b)(6) Plausibility Standard

The general rule in federal court is that a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to survive a Rule 12(b)(6) motion to dismiss a plaintiff is required to provide factual allegations that raise a right of relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   To resolve a motion to dismiss, the district court "may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940-41, 173 L.Ed.2d 868 (2009). Then, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   Id.

A plausible claim for relief is one that creates more than a suspicion of entitlement to relief. Twombly, 500 U.S. at 555 (citing 5 C. Wright & A Miller, Federal Practice and Procedure, 1216, pp. 235-236 (3d ed. 2004)).   When alleging a conspiracy, the plaintiff must allege facts that plausibly suggest and are not merely consistent with an agreement.  Id. at 557.

## B.    Rule 9(b) Particularity Standard

When alleging fraud or mistake, a plaintiff must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  If a fraud or mistake claim is not stated with particularity, then the claim must be dismissed.  "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent

acts, when they occurred, and who engaged in them." Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006) (citation and quotations omitted). Stated another way, a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted).

Since Kingdom brings conspiracy to commit misrepresentation and fraud claims, it must plead those conspiracy claims with particularity as required by Rule 9(b). See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067-68 (11th Cir. 2007) (explaining that where a conspiracy claim alleges that defendants conspired to commit fraud, the plaintiffs must plead the act with specificity).

## IV.    ANALYSIS

### A.    Breach of Contract (Counts One and Two)

In Count One of the Complaint Kingdom asserts a breach of contract claim against Cutler. In Count II Kingdom asserts a breach of contract claim against United. Although Cutler and United ask that Kingdom's entire complaint be dismissed for failure to state a claim, the briefs filed in support of the motions to dismiss do not discuss these claims at all or show how the factual allegations in the complaint fail to state a plausible claim for relief for breach of contract. Realizing this error, United argues in its reply brief that the breach of contract claim fails because its contract with Kingdom contained a merger clause that cancelled any prior agreements between the parties. The agreement

6

Kingdom alleges was breached was made before the contract was entered into and therefore was cancelled once the contract went into effect. Since United only raised the argument in its reply brief, the Court will not consider it. See Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1351 n. 11 (11th Cir. 2009) (treating argument as waived where it was raised for the first time in a reply brief). Moreover, United's argument relies on an issues that would be more appropriate for summary judgment, mainly an issue of fact about when the agreements were made.

Accordingly, the breach of contract claims against United and Cutler are not dismissed.

### B.     Tortious Interference with Business Relations (Count Three)

Kingdom brings a tortious interference with business relations claim against United and Cutler.  Kingdom alleges United interfered with its business relations with Cutler by "inducing Cutler to terminate its relationship with Kingdom and to cease performing any of the obligations it owed Kingdom." (Compl. ¶ 96).  Cutler is alleged to have interfered with Kingdom's business relations with its downline agents by "encouraging United to terminate Kingdom's appointment as an [agency]." (Compl. ¶ 98).  United and Cutler contend that Kingdom has failed to make out a claim for tortious interference on the basis that they are not strangers to the business relationship.

In Georgia, a necessary element of a tortious interference claim is the requirement that the defendant act "without privilege." Disaster Servs., Inc. v. ERC P'ship, 228 Ga.App. 739, 740, 492 S.E.2d 526, 528 (1997). To act "without privilege," the defendant must be "a stranger to the business relationship giving rise to and

underpinning the contract." <u>Benefit Support, Inc. v. Hall Cnty.</u>, 281 Ga.App. 825, 830, 637 S.E.2d 763, 770 (2006). A party is a stranger to a transaction when that party has no "legitimate interest in either the contract or a party to the contract." <u>Cox v. City of Atlanta</u>, 266 Ga.App. 329, 332, 596 S.E.2d 785, 788. Moreover, "[o]ne is not a stranger to the contract simply because one is not a party to the contract." <u>Atl. Mkt. Ctr. Mgmt., Co. v. McLane</u>, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998).The group of persons subject to suit for tortious interference as "strangers" is very limited. <u>Id.</u> at 283-84.

Kingdom argues that United and Cutler were strangers to the business relationship because each interfered with Kingdom's business relations with its agents and business partners and those business relations had separate agreements with parties other than Cutler and United.

The Court finds that the allegations in the complaint show that United had an interest in Kingdom's transactions with Kingdom's agents since United was financing the operations. Likewise, the Court finds that Cutler had an interest in Kingdom's transactions with its agents since Cutler received compensation for the premiums generated by sales of each of those downline agents. The Court cannot see how Kingdom can show that Cutler and United were strangers to any of the business relationships. Any amendment to these claims would be futile. Accordingly, Count Three is dismissed with prejudice.

### C.    Misappropriation of Trade Secrets (Count Four)

Kingdom brings a misappropriation of trade secrets claim against Cutler. Although Cutler argues that the entire complaint should be dismissed, it does not

discuss this claim at all or show how the factual allegations in the complaint fail to state a plausible claim for relief. Accordingly, the Court considers the claim sufficient. Count Four is not dismissed.

### D.    Negligent Misrepresentation (Count Five)

Kingdom's Count Five contains boilerplate language of a negligent misrepresentation claim against United and Cutler.  It claims they "negligently supplied false, inaccurate and misleading information and negligently failed to supply and/or omitted from disclosure true and correct information from Kingdom." (Compl. ¶¶ 108 and 109).  Kingdom provides factual support for this claim by incorporating earlier paragraphs in the complaint.

Although a claim of negligent misrepresentation does not have to meet the heightened standard of Rule 9(b),[1] it still must meet the plausibility standard. Kingdom's negligent misrepresentation claim does not meet the plausibility standard because it does not connect the facts alleged to have been negligently represented to the elements of the cause of action.  Kingdom incorporated a substantial number of paragraphs into the claim without explaining how those factual allegations show that the conduct constitutes negligent misrepresentation.

Accordingly, this claim is dismissed.  Since this complaint spent much time in

---

[1] At this time, the Eleventh Circuit does not require heightened pleading for a claim of negligent misrepresentation. Though district courts outside of this jurisdiction have required plaintiffs to plead their negligent misrepresentation claims under Rule 9(b), cases issued by judges in the Georgia have not required plaintiffs to do so. Atwater v. National Football League Players Ass'n, 2007 WL 1020848, at * 15 (N.D. Ga. March 29, 2007).

state court where the plausibility standard does not apply, Kingdom may amend its complaint by connecting the elements of the negligent misrepresentation claim to the facts alleged. <u>See</u> <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.").

The Court encourages Kingdom to not incorporate factual paragraphs into the negligent misrepresentation claim.

### E.     Fraudulent Misrepresentation (Count Six)

Similar to Count Five, Count Six contains boilerplate fraudulent misrepresentation language.  Kingdom alleges that Cutler and United willfully and knowingly provided false and misleading information to Kingdom. Kingdom realleges multiple paragraphs of the complaint in describing what conduct United and Cutler took that was false.   Like the negligent misrepresentation claim, the problem is that the factual allegations are not connected to the generally pled claim. Moreover, the claim does not meet the particularity standard of Rule 9(b).  The claim is dismissed, but Kingdom may amend its complaint to connect the elements of the fraud claim to facts showing the details of the fraud. The Court encourages Kingdom to not incorporate factual paragraphs into the fraud claim.

### F.     Unjust Enrichment (Count Seven)

Kingdom brings an unjust enrichment claim against Cutler. Although Cutler argues that the entire complaint should be dismissed, it does not discuss this claim at

all or show how the factual allegations in the complaint fail to state a plausible claim for relief. Accordingly, the Court considers the claim sufficient. Count Seven is not dismissed.

### G.    Quantum Meruit (Count Eight)

Kingdom brings quantum meruit claims against United and Cutler. A quantum meruit claim requires proof that the plaintiff performed valuable services to the defendant and that the defendant accepted those services without providing payment for the reasonable value of the services.  Langford v. Robinson, 612 S.E.2d 552, 556 (Ga. Ct. App. 2005).  United argues in its reply brief that no quantum meruit claim can exist because the only agreement between United and Kingdom was an express written agreement. An express written agreement bars a quantum meruit claim. Since United raises the argument in its reply brief, the Court will not consider it.  Moreover, it is not clear whether the written agreement is the only agreement alleged to have been breached. The complaint describes promises made by United that do not appear to be made part of the Kingdom and United's express written agreement. Therefore, the issue is more appropriate for a summary judgment motion.

While the Court does not find the quantum meruit claim barred as a matter of law, it finds a problem with Kingdom's incorporation of every factual allegation in the claim followed by boilerplate description of the cause of action.  Kingdom did not connect the facts to its claim of quantum meruit to satisfy the plausibility standard.

Accordingly, Kingdom must amend its complaint to state a plausible quantum meruit claim.

### H. Promissory Estoppel (Counts Nine and Ten)

Kingdom brings a promissory estoppel claim against Cutler in Count Nine and against United in Count Ten. Cutler and United raise the same arguments for dismissing the promissory estoppel claims as they raised for dismissing the breach of contract claims. The Court declines to dismiss the promissory estoppel claims for the same reasons it declined to dismiss the breach of contract claims. Counts nine and ten are accordingly not dismissed.

### I. Conspiracy (Count Eleven)

Kingdom alleges that the Defendants conspired to commit the tortious acts described in the complaint. Kingdom's complaint fails to describe any facts about the agreement to conspire made between Cutler and United. The complaint contains only conclusory allegations. There are no allegations about when the agreement was made, the terms of the agreement, or how the parties knew the purpose of the agreement. The failure of Kingdom to plead any facts about the agreement serves as a basis for dismissing the conspiracy claim. Moreover, Kingdom's failure to plead fraudulent misrepresentation with specificity provides a basis for dismissing the conspiracy claim to the extent it is a claim to conspire to commit fraudulent representation.

The conspiracy claim is accordingly dismissed, but Kingdom may amend its complaint. The amended complaint must plead the conspiracy claim with sufficient facts to show the plausibility of an agreement. For the conspiracy to commit fraudulent misrepresentation, Kingdom must plead the fraud with sufficient particularity; otherwise, it will be dismissed with prejudice.

### J. Constructive Fraud (Count Twelve)

Kingdom brings a constructive fraud claim against Cutler. Constructive fraud occurs when the defendant unintentionally breaches a fiduciary duty. O.C.G.A. § 23-2-51; Black & White Const. Co., Inc. v. Bolden Contractors, Inc., 187 Ga. App. 805, 809, 871 S.E.3d 471, 426 (1988). A fiduciary duty arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58.

Kingdom's constructive fraud claim states that Kingdom shared confidential information about agents with Cutler and that Cutler had an obligation to disclose to Kingdom information that the agents were transferred without Kingdom's consent to a different location in the hierarchy. Cutler committed constructive fraud when it failed to disclose those facts. (Compl. ¶¶ 139-141).

Cutler argues this claim should be dismissed because Kingdom fails to allege sufficient facts showing Cutler owed a fiduciary duty to Kingdom. Cutler contends that Kingdom has alleged nothing more than an arm's length business relationship between Kingdom and Cutler and therefore Cutler had no duty to disclose information to Kingdom. Georgia law provides that "[a]n obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts."Infrasource, Inc. v. Hahn Yalena Corp., 272 Ga.App. 703, 705, 613 S.E.2d 144, 146 (2005). "In the absence of a confidential relationship, no duty to disclose exists

when parties are engaged in arm's-length business negotiations; in fact, an arm's-length relationship by its nature excludes a confidential relationship." Id. If the parties are not sharing a common business objective - like a partnership or joint venture - then they do not have a confidential relationship. Id. at 706; Id. at 146-47.

Kingdom's complaint does not allege any facts showing that its transactions with Cutler were more than arm's-length. Kingdom and Cutler were not business partners, joint venturers, or otherwise. They each had their separate business objectives. These facts mean that Cutler did not have a duty to disclose and could not have committed constructive fraud based on the theory alleged by Kingdom. Any amendment would be futile; accordingly, the constructive fraud claim is dismissed with prejudice.

## V.    CONCLUSION

For the above reasons, the motions to dismiss are granted in part and denied in part. Kingdom must amend its claims for negligent misrepresentation (Count Five), fraudulent misrepresentation (Count Six), quantum meruit (Count Eight), and conspiracy (Count Eleven). Kingdom's claims for tortious interference with business relations (Count Three) and constructive fraud (Count Twelve) are dismissed with prejudice. The amended complaint is due  June 15, 2011.

SO ORDERED, this the 31st  day of May, 2011.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc